UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VILLAGE OF SAUK VILLAGE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 15-cv-9183 |
| v. ) | |
| ) | Judge John W. Darrah |
| ROADWAY EXPRESS, INC. and ) | |
| YRC WORLDWIDE INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

On October 16, 2015, Defendants Roadway Express, Inc. ("Roadway") and YRC Worldwide Inc. ("YRC") removed an Amended Complaint from the Circuit Court of Cook County to federal court. In the Amended Complaint, Plaintiff Village of Sauk Village alleged trespass, nuisance, and negligence arising from water pollution allegedly caused by releases of chlorinated solvents in the water, land, and air of Sauk Village ("Village"). The Amended Complaint alleged three counts against Defendants Roadway and YRC: negligence, in Count I; trespass, in Count IV; and nuisance, in Count VI. In support of their claims, Plaintiff retained Lois George as an expert witness, who concluded that a YRC trucking terminal (the "YRC Terminal") was the source of the vinyl chloride contamination in the Sauk Village water supply. Defendants filed a Motion to Exclude the Opinion of Plaintiff's Expert Lois George [43] pursuant to Federal Rule of Evidence 702. For the reasons set forth below, Defendants' Motion [43] is denied.

## BACKGROUND

Plaintiff is a municipality that owns and operates a public water supply, consisting of three community wells. Well 3 is located adjacent to the YRC Terminal. Wells 1 and 2 are

approximately twenty feet apart from each other and are located approximately one mile south of Well 3. The Illinois Environmental Protection Agency ("IEPA") detected Cis-1,2-dichloroethylene ("DCE") in Well 3 in 2002. DCE was detected in treated water in February 2008. In April 2008, vinyl chloride was detected in the treatment plant for Well 3. After Well 3 was turned off, vinyl chloride was detected in Wells 1 and 2.

On May 1, 2014, Plaintiff filed a complaint against YRC; Arcadis U.S., Inc.; Arcadis NV; and Lincoln Limited in the Circuit Court of Cook County, Illinois. The complaint alleged that chemical spills on the properties of YRC and Lincoln contaminated Plaintiff's drinking water and that the Arcadis defendants had made misrepresentations to Plaintiff in the course of remediation work for YRC. The Arcadis defendants were dismissed from the suit; and, on July 30, 2014, Plaintiff filed an amended complaint. On September 17, 2015, Plaintiff moved to voluntarily dismiss Lincoln. That motion was granted on September 18, 2015.

On October 16, 2015, Defendants filed a Notice of Removal, and Plaintiff moved to remand the case back to state court. While the Motion to Remand was pending, this Court extended the expert report deadline to November 30, 2015, for Plaintiff's report and to February 1, 2016 for Defendants' expert report. On November 30, 2015, Plaintiff served the expert report of Lois George, who concluded that the YRC Terminal was more likely than not the source of the vinyl chloride contamination in the Village of Sauk Village's drinking water wells. On February 1, 2016, Defendants served the expert report of Steve McGinnis who concluded that the source of the vinyl chloride was a collection of several landfills located to the west and southwest of the Village. McGinnis's report also alleged that there were several flaws in George's report. George was deposed on June 9, 2016; and the parties filed an agreed motion

to extend the expert discovery deadline to June 21, 2016. On June 17, 2016, Plaintiff served a supplemental report by George.

## LEGAL STANDARD

Under the Federal Rule of Evidence 702, trial courts must determine, as a precondition to admissibility, whether expert evidence rests on a reliable foundation and is relevant. *Manpower, Inc. v. Ins. Co. of Pennsylvania*, 732 F.3d 796, 806 (7th Cir. 2013). "Expert testimony is admissible when the testimony is reliable and would assist the trier of fact to understand the evidence or determine a fact at issue in a case." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009) (citing Fed. R. Evid. 702; *Daubert v. Merrell Down Pharmaceuticals, Inc.*, 509 U.S. 579, 589-91 (1993)). The party seeking to introduce expert testimony bears the burden of demonstrating that the proposed testimony satisfies this standard by a preponderance of the evidence. *Id.* The rule on expert testimony is liberal, and doubts about the usefulness of an expert's testimony are generally resolved in favor of admissibility. *Davis v. Duran*, 277 F.R.D. 362, 366 (N.D. Ill. 2011) (citing *Krist v. Eli Lilly & Co.*, 897 F.2d 293, 298 (7th Cir. 1990); *United States v. Finch*, 630 F.3d 1057, 1062 (8th Cir. 2011)).

## ANALYSIS

Defendants challenge George's expert opinion on two grounds: (1) the opinion is unsupported by expert analysis, as George does not apply a discernible methodology; and (2) George failed to apply a consistent methodology to identify and rule out potential sources of contamination other than the YRC Terminal.

In assessing the admissibility of proposed expert testimony, the focus "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at

595. A court must "make the following inquiries before admitting expert testimony: first, the expert must be qualified as an expert by knowledge, skill, experience, training, or education; second, the proposed expert must assist the trier of fact in determining a relevant fact at issue in the case; third, the expert's testimony must be based on sufficient facts or data and reliable principles and methods; and fourth, the expert must have reliably applied the principles and methods to the facts of the case." *Lees v. Carthage College*, 714 F.3d 516, 521-22 (7th Cir. 2013). There is no bright-line reliability test, and the reliability inquiry should be "flexible." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 139 (1999). Defendants do not challenge George's qualifications or whether George would assist the trier of fact in determining a relevant fact at issue. Defendants challenge the reliability of George's principles and methods and whether she reliably applies the principles and methods to the facts of the case.[1]

Defendants first argue that George's opinion is purely based on her say-so, *i.e.*, that it is *ipse dixit*. Expert reports that do no more than give conclusions are not allowed under *Daubert*. *See Wendler & Ezra, P.C. v. Am. Int'l Grp., Inc.*, 521 F.3d 790, 791 (7th Cir. 2008) (excluding expert affidavit where expert did not "say what software he used, what data he fed it, what results it produced, and how alternative explanations (including spoofing) were ruled out."). George's opinion that the YRC Terminal is more likely than not the source of the vinyl chloride contamination is not merely conclusory. The report discusses spills of vinyl chloride precursors at the YRC Terminal, the composition of the soils around the YRC Terminal, and why other possible sources of vinyl chloride contamination should be excluded. Further, the report

---

[1] Defendants also challenge George's opinion because she came to a different conclusion than other experts who have studied this issue. However, the focus of a *Daubert* inquiry is based only on principles and methodology and not on the conclusions reached. *Daubert*, 509 U.S. at 595.

4

discusses several reports and studies done in the region and at the YRC Terminal as the factual underpinnings of George's opinion.

Defendants also argue that George's report ignores several factors in determining a groundwater contamination source. Defendants quote a similar case in which an expert cited eight factors in determining the source of vinyl chloride pollution:

> (1) significant quantities of solvents disposed at the source; (2) the source is a uniquely active biological environment that degraded PCE and TCE common solvents into DCE and vinyl chloride; (3) the solvents were dumped at a depth and in a manner where migration through the underground aquifer occurs; (4) the source has high-driving pressures or vertical gradients that cause migration through low permeability soils; (5) the source has the characteristics and chemical concentrations consistent with those detected in the class area; (6) the source is located up gradient from the class area, and there is a consistent pathway for migration to the class area; (7) the source has had, and continues to have, a release of sufficient mass to be consistent with the contamination detected in the class area; and (8) the timing of the detection of vinyl chloride and DCE in the class area is consistent with releases from the Landfill.

*Cannata v. Forest Pres. Dist. of DuPage Cty.*, No. 06 C 2196, 2008 WL 4360644, at *5 (N.D. Ill. Sept. 23, 2008). Defendants claim that George did not consider or discuss any criteria for determining a contamination source. However, George discussed the presence of vinyl chloride precursors at the YRC Terminal and the lack of any vinyl chloride or precursors at other relevant sites. George also discussed the relative permeability of the soils and ground at the YRC Terminal and how that could lead to contamination of the drinking water. The argument that George did not consider other factors that Defendants consider important goes to weight, not admissibility. *See Davis v. Duran*, 277 F.R.D. 362, 366 (N.D. Ill. 2011) ("Vigorous cross examination, presentation of contrary evidence and careful jury instructions, . . . , are the traditional and appropriate means of attacking shaky but admissible evidence.").[2] Defendants

---

[2] Defendants state that those factors argue against the YRC Terminal as the source of the vinyl chloride; but, again, when assessing the admissibility of proposed expert testimony, the

5

argue that an expert's opinion should be excluded where they failed to consider important factors. However, the cases Defendants cite exclude expert opinions where there is no basis for the opinion. *See, e.g., Ramsey v. Consol. Rail Corp.*, 111 F. Supp. 2d 1030, 1038 (N.D. Ind. 2000) (excluding expert opinion where expert did not explain how Plaintiff was exposed to chemical from drinking water when that chemical had not been detected in the relevant well in eight years of testing).

Defendants also argue that George's opinion does not state with scientific certainty how vinyl chloride precursors broke-down into vinyl chloride and made their way into the drinking water from the YRC Terminal. But a lack of "scientific certainty . . . is not a basis for exclusion under Rule 702." *Cage v. City of Chicago*, 979 F. Supp. 2d 787, 809-10 (N.D. Ill. 2013). Rule 702 does not require "that an expert's opinion testimony be expressed in terms of a reasonable scientific certainty in order to be admissible." *Stutzman v. CRST, Inc.*, 997 F.2d 291, 296 (7th Cir. 1993) (quoting *United States v. Cyphers*, 553 F.2d 1064, 1072-72 (7th Cir.1977)). In the Seventh Circuit, "an expert's lack of absolute certainty goes to the weight of his testimony, not the admissibility." *Stutzman*, 997 F.2d at 296.

Finally, Defendants argue that George did not rule out all other potential sources. Defendants state that, since other possible sites were ruled out due to a lack of vinyl chloride, the YRC Terminal should be ruled out because no vinyl chloride was detected there. George's opinion that the vinyl chloride is more likely than not from the YRC Terminal is based, in part, on the detection of vinyl chloride precursors at the site. George ruled out Lincoln Landfill because no volatile organic compounds were detected in any of the groundwater samples.

---

focus "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595.

J&J Cleaners was ruled out because no vinyl chloride was detected in soils or groundwater, and the proximity of J&J Cleaners to Wells 1 and 2 make it more likely that the vinyl chloride would have been detected in those wells first if J&J Cleaners was the source of the contamination. Vinyl chloride was first detected in Well 3 and later detected in Wells 1 and 2 after Well 3 was shut off. George discounted sources outside of the Village, specifically, landfills in South Chicago Heights, because of an alleged groundwater break.

George's expert opinion is sufficiently reliable to assist the trier of fact to understand the evidence or determine a fact at issue in this case.

## CONCLUSION

Defendants' Motion to Exclude the Opinion of Plaintiff's Expert Lois George [43] pursuant to Federal Rule of Evidence 702 is denied.

Date:     January 25, 2017         /s/ _____
                                                                     JOHN W. DARRAH
                                                                    United States District Court Judge